IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADEDAYO A. ADEWOLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-01540 |
| | ) | Assigned To: Kennedy, Henry H. |
| v. | ) | Assign. Date: 9/5/2008 |
| | ) | Description: Employ. Discrim. |
| PSI Services, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S AMENDED ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS**

Defendant PSI Services, Inc. ("Defendant") respectfully submits its Answer and Affirmative Defenses to Plaintiff Adedayo Adewole's Complaint. Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant asserts a general denial to all of Plaintiff's allegations that are not specifically admitted herein.

1.   Paragraph one of the Complaint is Plaintiff's statement of his case and assertion of jurisdiction, to which no response is required. To the extent an answer is deemed necessary, Defendant admits that this is a civil action arising under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e et. seq., and the Civil Rights Act of 1866 as amended. Except for Plaintiff's national origin (Nigerian) and the assertion that Plaintiff is seeking damages for discrimination and retaliation, any statements of fact are denied, including the Complaint's premise that Defendant discriminated and retaliated against Plaintiff. Any remaining allegations contained in Paragraph 1 are denied.

2. Paragraph Two contains Plaintiff's assertion of jurisdiction, to which no response is required.

3. Defendant denies engaging in any acts of discrimination or any other conduct that would give rise to a claim or cause of action under the statutes cited by Plaintiff in this Paragraph, but admits that venue would be proper based on the allegations of the Complaint. Defendant admits it did employ Plaintiff in the District of Columbia, but denies that any acts of discrimination occurred in the District of Columbia or elsewhere.

4. Defendant admits that Plaintiff filed a charge and amended charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") dated October 16 and October 19, 2007, respectively, in which he alleges national origin discrimination and retaliation, but denies the factual and legal sufficiency of those claims. To the extent a response is required, all remaining allegations of Paragraph 4 of the Complaint are denied.

5. Defendant lacks sufficient information to admit or deny the allegations relating to Plaintiff's current or past residence and demands strict proof thereof. Defendant admits that Plaintiff was an employee (as defined under § 701(f) of Title VII, 42 U.S.C. § 2000e-(f)) of Defendant at all times relevant to the Complaint and that he was employed in the District of Columbia.

6. Defendant admits that it is a for profit company doing business in the District of Columbia. Defendant further admits that, at all times relevant to this Complaint, it was an employer as defined under § 701(b) of Title VII, 42 U.S.C. §2000e-(b). Defendant avers that it is a mental health services and mental retardation/developmental disabilities services provider under contract to District of Columbia agencies to provide community and residential services to

dually-diagnosed adults.  Defendant denies all remaining allegations contained in Paragraph 6 of the Complaint.

    7.        Based on information and belief, Defendant admits that Plaintiff is a Black male, but states that those characteristics are not relevant to his claims because he does not allege any discrimination based on race or gender.  Defendant lacks sufficient information to admit or deny the remaining allegations of the first two sentences of Paragraph 7 relating to Plaintiff's age, place of birth, rearing, education and date of immigration to the United States and demands strict proof thereof.  Defendant denies that Plaintiff was hired by Defendant on 4/29/05 as a Resident Counselor, but avers that Defendant hired Plaintiff on 10/1/06 as a Habilitation Counselor I.  Defendant lacks sufficient information to admit or deny that Plaintiff was certified for the position for which he was hired, or that any such certification even exists, and demands strict proof thereof.  Defendant denies that Plaintiff has extensive prior experience, performed all of his duties well, or received compliments from his supervisor for his alleged conscientious and caring service.  Defendant admits that Plaintiff received a routine cost-of-living pay increase, but denies that it was for "his good work performance".  Defendant denies the remaining allegations contained in Paragraph 7 of the Complaint.

    8.        Defendant denies that it encourages employees to use their private vehicles for business purposes, but avers that it reimburses employees for mileage if they choose to do so.  Defendant admits that Plaintiff would frequently have problems getting reimbursed for mileage because he submitted false mileage reports grossly overstating his mileage.  Defendant also avers that Plaintiff submitted false mileage reports claiming time spent on personal trips as time worked on the job, thus fraudulently obtaining wages from Defendant (some of which were paid at overtime rates) and that Plaintiff's fraudulent reports required Defendant to investigate the

reports submitted by Plaintiff. Defendant denies that Plaintiff contacted a "Mr. Antone" on 6/24/06 seeking reimbursement. Defendant further denies that it employed a Mr. Antone at any point relevant to the claims alleged in Plaintiff's Complaint. Defendant avers that it employed an Antone McClure, and that Plaintiff called Mr. McClure to inquire about reimbursement, but lacks sufficient information to admit that Plaintiff called Mr. McClure on 6/24/06 as alleged. Defendant denies that Plaintiff was suspended the next day, as well as Plaintiff's implicit allegation that he was suspended in retaliation for seeking reimbursement. Defendant admits that Plaintiff, pursuant to Defendant's policy and practice, was placed on administrative leave on April 25, 2006 (not June 25, 2006 as stated in the Complaint) pending the investigation of a complaint that Plaintiff had used demeaning language (not "foul language" as alleged in the Complaint), by calling one of Defendant's clients (a developmentally disabled adult) "stupid" to his face and in front of the client's sister. Defendant avers that such demeaning language directed against a client would constitute verbal client abuse, which both Defendant and the government agencies overseeing its programs consider to be serious misconduct that must be investigated. Defendant admits that Plaintiff filed an EEOC Charge. Defendant further admits that because the results of the investigation were inconclusive, Plaintiff was returned to work with back pay. Defendant avers that, without any action having been taken by EEOC, Plaintiff then withdrew his charge. Defendant denies the remaining allegations contained in Paragraph 8 of the Complaint.

9.      Defendant admits that Plaintiff submitted reimbursement requests and that it sent Plaintiff a letter dated July 17, 2007 warning him again about the possibility of termination if he continued to falsify his reimbursement requests and defraud Defendant. Defendant denies the remaining allegations contained in Paragraph 9 of the Complaint.

10. Defendant admits that Mary Kimbrough is Plaintiff's former supervisor and that she is African-American. Defendant further admits that on August 2, 2007 Ms. Kimbrough asked Plaintiff to accompany a resident to the grocery store. Defendant admits that Plaintiff refused to perform this assignment. Defendant denies that Plaintiff was reassigned the following day to a resident who had assaulted other counselors. Defendant avers that, on August 3, 2007, Plaintiff was given a one-day assignment to fill in for an absent employee. Defendant admits that Plaintiff refused this assignment. Defendant admits that Plaintiff was told that he would be suspended for refusing his assignments and that he was removed from the schedule. Defendant denies all remaining allegations contained in Paragraph 10.

11. Defendant admits that on or about August 21, 2007 Plaintiff contacted the Vice President of Human Resources, Melvin Williams, who is African-American. Defendant denies that Mr. Williams urged Plaintiff to return to work. Defendant denies that Mr. Williams made an unqualified statement that Plaintiff would not be terminated as stated in the Complaint. Defendant admits that Mr. Williams told Plaintiff that he would be reimbursed for his mileage, but that the reimbursement would be subject to adjustments pending the then ongoing investigation into Plaintiff's suspected mileage reimbursement fraud. Defendant denies the remaining allegations contained in Paragraph 11 of the Complaint.

12. Defendant lacks sufficient information to admit or deny the allegations relating to Plaintiff's state of mind regarding why he returned to work. Further, Defendant avers that Plaintiff had no factual basis to fear any "further retaliation" because Defendant never retaliated against Plaintiff. Defendant admits that Plaintiff returned to work on August 22, 2007 and was terminated on September 12, 2007. Defendant denies that Plaintiff was forced to work a double

shift on September 12, 2007 or on any other date.  Defendant admits that Plaintiff was asked to appear at Defendant's central office on September 12, 2007 where he was presented with a termination letter citing serious misconduct by Plaintiff, of which repeatedly overstating his mileage claims was only one example of his attempts to defraud the company.  Defendant denies that on each occasion for which he claimed mileage, his house manager obtained prior approval from the front office and Plaintiff claimed only the mileage that he actually used to transport the client.  Defendant denies all remaining allegations contained in Paragraph 12.

13.     Defendant denies all allegations contained in Paragraph 13 of the Complaint. Defendant also denies the allegations implicit in the statements of Plaintiff's belief contained in Paragraph 13.

14.     Defendant admits that following Plaintiff's termination, it hired the most qualified applicant, who happened to be an American-born male.

15.     Defendant admits that, following Plaintiff's termination he was removed from Defendant's payroll and no longer received compensation from Defendant.  Defendant lacks sufficient information to admit or deny whether Plaintiff lost his apartment, had to accept charity from others, suffered any stress from having to search for alternative employment, lost sleep, or was anxious about the prospect of finding other employment.  To the extent a response is required, these allegations are denied in their entirety and Defendant demands strict proof thereof.  Defendant denies all remaining allegations contained in Paragraph 15 of the Complaint.

16.     Defendant incorporates the Responses to Paragraphs 1- 15 as if fully set forth herein.

17. Paragraph 17 contains Plaintiff's legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 17 of the Complaint.

18. Defendant denies the allegations contained in the paragraph labeled Paragraph 20 (but presumably intended to be Paragraph 18 of the Complaint).

19. Defendant denies violating either Title VII or 42 U.S.C. §1981. Defendant has insufficient information to admit or deny all other allegations contained in the paragraph labeled Paragraph 21 (but presumably intended to be Paragraph 19 of the Complaint) and demands strict proof thereof.

20. Defendant denies violating either Title VII or 42 U.S.C. §1981. Defendant has insufficient information to admit or deny all other allegations contained in the paragraph labeled Paragraph 22 (but presumably intended to be Plaintiff's Paragraph 20) and demands strict proof thereof.

Defendant denies that Plaintiff is entitled to any of the relief requested in his prayer for relief, designated under the caption "RELIEF REQUESTED" as Paragraph 1-7 on pages 6-7 of Plaintiff's Complaint.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to exhaust his administrative requirements.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed to comply with the time limits for pursuing administrative and judicial remedies for Title VII complaints.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate his damages, if any.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the concepts and statutes of limitations, unclean hands, laches, res judicata, collateral estoppel, settlement and release or accord and satisfaction.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to state a prima facie case under any of his claims or causes of action he has asserted; in the alternative, assuming Plaintiff has stated a prima facie case, all behavior and actions on the part of Defendant concerning Plaintiff were wholly and completely based on sound business judgment, and were in no way pretextual or based on any discriminatory or retaliatory reasons.

### SEVENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert additional defenses, affirmative or otherwise, upon further investigation and discovery into the matters alleged. PSI further asserts all applicable statutory limitations with respect to Plaintiff's damage claims.

### COUNTERCLAIMS

Jurisdiction And Venue

Defendant incorporates herein by reference, each and every allegation, answer and denial contained in each of the above paragraphs and asserts the following counterclaims.

1. The Court has supplemental jurisdiction over this counterclaim under 28 U.S.C. § 1367.

2. Venue is proper for this counterclaim because it is ancillary to the claims brought by Plaintiff.

Facts

1. Defendant is a licensed mental health and mental retardation/developmental disabilities provider under contract to local government agencies to provide community and residential developmental disabilities services to dually-diagnosed adults. "Dually-diagnosed means that they have both mental retardation and mental illness.

2. Defendant's Residential Program provides supervised independent residence living for adult program participants. The Residential Program operates exclusively in the District of Columbia, as is required by the contract. Program services are regulated by both District and Federal funding sources. The work of Defendant's employees must meet the standards of both the District of Columbia and Federal Medicaid regulations.

3. Each program participant has an Individual Service Plan (ISP) that is approved by the District of Columbia Department of Developmental Disabilities. Each ISP prescribes specific individualized goals, treatments and activities to help participants function and thrive in the community and improve their socialization despite their particular mental, emotional and/or behavioral problems.

4. The average mental age and intellectual functioning of the program participants in Defendant's Residential Program is 10 years old. The most frequently occurring psychiatric

disorder is psychosis.  For this reason, appropriate and consistent supervision in the community is critical, as is the integrity of the Residential Counselor in protecting the civil and human rights of the participants in their care.

5. Plaintiff worked as a Residential Counselor in the Residential Program. A Residential Counselor works on day, evening, weekend or overnight shits, depending on the level of supervision that each individual program participant requires.  The Residential Counselor is responsible for the participant's development and effective functioning.

6. Following each participant's ISP is the primary responsibility of the assigned Residential Counselor. Counselors must schedule and engage their assigned program participants in ISP relevant activities throughout their shift.

7. Because Residential Counselors accompany participants in the community, they are authorized to use public transportation as much as possible as well as private cars. The Residential Counselors may drive their assigned participants to various activities consistent with each participant's ISP.

8. Defendant pays Residential Counselor's mileage "reimbursement" at a uniform rate per mile for the use of their personal vehicles for community travel while on the job.  All staff complete mileage claim forms bi-weekly on which mileage reimbursement payments are based.

9. Plaintiff abused his position by conducting personal business and other activities while on duty, rather than providing the services described in his assigned participant's ISP.  In the most egregious case, Plaintiff regularly provided a commuting service for his sister, driving her to her job at the National Institutes of Health (NIH) in suburban Maryland. These trips all followed the same pattern.  Plaintiff drove participant K (full name reduced to first initial for

confidentiality purposes) from his residence to Plaintiff's sister's home in Riverdale, MD. Plaintiff then drove his sister and K to NIH to drop his sister off at her job.

10.     Although Plaintiff frequently described his trips to NIH as a "picnic" for K on his mileage reimbursement form, nothing occurred during these frequent trips to NIH that had anything to do with either Plaintiff's job or K's ISP.

11.     Plaintiff's pursuit of his own interests while supposedly working for Defendant was not limited to his sister's commute to NIH.  On at least one other occasion during his shift working for Defendant, Plaintiff took K to an automobile parts supplier near his home in Riverdale, MD to pick up speakers for his car. Needless to say, this activity was wholly unrelated to K's ISP.

12.     Plaintiff used his car for personal reasons during his shift roughly 40 times throughout his employment and sought, and received, mileage reimbursement from Defendant.

13.     Plaintiff reported the time spent on personal trips as time worked on his job, thus fraudulently obtaining wages from Defendant, some of which were paid at overtime rates.

Claims

1.     Plaintiff's conduct as set forth above constituted fraud, theft, breach of fiduciary duty, conversion/misappropriation, embezzlement, and injury to Defendant's personal property under the laws of the District of Columbia.

WHEREFORE, Defendant requests that the Court enter judgment in its favor and against Plaintiff, that Plaintiff's claims be dismissed in their entirety with prejudice, that Defendant recover it's costs in this action, and for other relief as may be appropriate.

Respectfully submitted,

/s/ Ardra M. O'Neal

_____
Ardra M. O'Neal, Esq.
ardra@theoenalfirm.com
D.C. Bar No. (464742)
The O'Neal Firm, LLP
700 12th Street, NW, Suite 700
Washington, DC 20005
Phone/E-Fax : 1-866-771-0151

DATED:  August 27, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August 2009, I electronically filed the foregoing document with the clerk of the court by using the ECF system, which will send a notice of electronic filing to the following counsel of record:

James L. Kestell
jlkestell@cox.net
Micheal Deeds
mikedeeds@juno.co,
Kestell & Associates
209 Midvale Street
Falls Church, VA 22046-3510
Phone: 703-237-2912
Fax: 703-237-4321

Respectfully submitted,

/s/ Ardra M. O'Neal

_____
Ardra M. O'Neal, Esq.