# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| ADEDAYO A. ADEWOLE, <br><br> Plaintiff, <br><br> v. <br><br> PSI SERVICES, INC., <br><br> Defendant. | Civil Action 08-01540 (HHK) |

## MEMORANDUM OPINION

Plaintiff Adedayo A. Adewole brings this suit against PSI Services, Inc., alleging discrimination based on his national origin and retaliation for complaining about such discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Adewole's claims arise from his termination from employment at PSI amid allegations of fraud. Before the Court is PSI's motion for summary judgment [#16]. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted.

## I. BACKGROUND

PSI provides mental health and related services to local government agencies, including the District of Columbia. PSI's Residential Program allows adult program participants with developmental disabilities to live in a supervised independent living environment. Adewole worked as a counselor in PSI's Residential Program, providing supervision and assistance to program participants. PSI counselors are permitted to use their personal vehicles to transport

their assigned program participants for purposes consistent with each participant's individualized service plan. PSI reimburses employees on a per-mile basis for the use of their personal vehicles in the performance of these duties.

Adewole alleges that he frequently had difficulty obtaining his mileage reimbursements from PSI. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") Ex. 1 ("Adewole Decl.") ¶ 8. In April 2006, Adewole called Residential Director Antone McClure seeking reimbursement for the prior month's mileage. According to Adewole, McClure offered no explanation for the nonpayment of his mileage claims. Adewole Decl. ¶ 8. The next day, Adewole was suspended for allegedly referring to a program participant as "stupid." Adewole Decl. ¶¶ 8–9; Def.'s Mem. in Supp. of Summ. J. ("Def.'s Mem.") Ex. 2 ("Williams Decl.") ¶ 11. Believing this explanation for his suspension to be false, Adewole filed an EEOC complaint on May 10, 2006, alleging that he had been discriminated against because of his Nigerian origin. Pl.'s Opp'n Ex. 2. According to Adewole, after he filed the complaint, PSI reimbursed him for several weeks of travel and asked him to withdraw his complaint, telling him that he would be compensated for his lost time at work. Adewole Decl. ¶ 10. Adewole subsequently withdrew the complaint.[1]

For the majority of his time at PSI, Adewole was assigned to a program participant named K.G.[2] Sometime in 2007, K.G. reported to PSI staff that Adewole would frequently drive him to Adewole's sister's house to pick her up and drive her to work. Following K.G.'s report, PSI

---

[1] PSI asserts that its investigation into the allegation of verbal abuse was inconclusive, in part because Adewole "left the United States for two months during his suspension, which prolonged and ultimately frustrated the investigation. As a result, the accusation was neither proved nor disproved." Williams Decl. ¶ 12.

[2] PSI is required to keep the names of program participants confidential. Accordingly, the Court will refer to this program participant only as K.G.

conducted an audit of Adewole's mileage claim forms and found numerous entries for trips to and from the National Institutes of Health, where PSI alleges Adewole's sister worked, as well as trips to and from Riverdale, Maryland, where Adewole lived during his employment with PSI. PSI asserts that Adewole also took K.G. to Adewole's family picnic and on other personal errands. Williams Decl. ¶¶ 20–22.

Adewole disputes these assertions, stating that he has no family in the United States. Def.'s Mem. Ex. 3 ("Adewole Dep.") at 22. He also avers that no one from PSI confronted him regarding these accusations. They did, however, issue him two written warnings, in January of 2007 and again that July, stating that the mileage he reported for reimbursement was excessive and advising him that he could be terminated for falsifying mileage on his claims forms. Williams Decl. ¶¶ 29–30.

On September 12, 2007, Adewole was summoned to PSI's office to sign paperwork for outstanding mileage reimbursement claims. Upon Adewole's arrival, McClure issued him a notice of termination for claiming personal use of his vehicle on his mileage reimbursement forms. Adewole subsequently commenced this action, alleging that PSI discriminated against him on the basis of his national origin and retaliated against him for filing his 2006 EEOC complaint. PSI now moves for summary judgment.

## II. LEGAL STANDARD

A motion for summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit

under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must support its factual positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets its burden, the non-moving party must then establish that a genuine dispute as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must show that "the evidence is such that a reasonable jury could return a verdict" in its favor. *Anderson*, 477 U.S. at 248. Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine dispute for trial. *See* FED. R. CIV. P. 56(c)(1), (e); *Celotex*, 477 U.S. at 322 n.3. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

### III. ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It further prohibits retaliation against an employee "because he has opposed any practice made . . . unlawful . . . by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id*. § 2000e-3(a). The Civil Rights Act of 1866, 42 U.S.C. § 1981, similarly

4

prohibits both discrimination and retaliation in employment. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452–57 (2008).[3]

Adewole alleges that his termination violated Title VII and § 1981 because it was driven by two impermissible motives: discrimination against him on the basis of his Nigerian national origin, and retaliation for having filed an EEOC complaint. Before the Court reaches the merits of these claims, however, it must address whether Adewole can survive PSI's summary judgment motion without having established a prima facie case. To that question, the Court now turns.

A.  **Adewole Does Not Need to State a Prima Facie Case to Survive Summary Judgment**

For many years, courts evaluated discrimination and retaliation claims under Title VII and § 1981 using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that scheme, a plaintiff must first establish a prima facie case of discrimination or retaliation. If she does so, the burden shifts to the employer to present a legitimate, non-discriminatory justification for the challenged action. *See Holcomb v. Powell*, 433 F.3d 889, 895, 901 (D.C. Cir. 2006); *Carney v. Am. Univ.*, 151 F.3d 1090, 1092–93 (D.C. Cir. 1998). In recent years, however, the Supreme Court and the D.C. Circuit have clarified that where an employer has asserted a legitimate justification for its actions, the district court should eschew the prima facie inquiry and proceed directly to the ultimate issue of discrimination or retaliation *vel non*, asking: "Has the employee produced sufficient evidence for a reasonable jury

---

[3] This opinion does not analyze Adewole's § 1981 claim separately from his Title VII claim because, in the employment context, the two statutes are roughly coextensive, and neither party identifies an area of divergence that would be relevant here. *See CBOCS*, 553 U.S. at 454–55 (discussing the overlap between Title VII and § 1981 and noting the different remedies created by each statute); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 n.1 (1999) ("This Court has applied the 'framework' developed in Title VII cases to claims brought under [42 U.S.C. § 1981].").

to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee . . . ?" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008); *see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying *Brady* to retaliation claims).

Adewole understands the D.C. Circuit's decisions in *Brady* and *Jones* to mean that an employer who offers a legitimate explanation for its actions has effectively waived the right to challenge the sufficiency of the plaintiff's prima facie case. Pl.'s Opp'n at 13. Thus, Adewole argues, because he has conceded that PSI's proffered explanation for his termination is facially legitimate, he is relieved from his obligation to present a prima facie case. PSI responds that subsequent decisions in this district show that *Brady* and *Jones* do not have that effect. Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") at 4. Adewole is correct.

PSI cites *Kelly v. Mills*, 677 F. Supp. 2d 206, 221 (D.D.C. 2010), *Lewis v. District of Columbia*, 653 F Supp. 2d 64, 77 (D.D.C. 2009), and *Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009), for the proposition that a Title VII plaintiff must still make out a prima facie case after *Jones* and *Brady*. This Court, however, does not read those cases in the same fashion. For example, *Kelly* states that although "the strength of plaintiff's prima facie case remains a *relevant consideration*," once the defendant has offered a legitimate explanation for its actions, "the *only question* is whether 'the employee produced sufficient evidence for a reasonable jury to find [discrimination or retaliation].'" *Kelly*, 677 F. Supp. 2d at 220–21 (quoting *Brady*, 520 F.3d at 494) (emphases added). Similarly, *Adesalu* states that "the Court still first must determine whether plaintiff has suffered an adverse employment action" not because that question is part of the prima facie inquiry, but rather because Title VII does not proscribe behaviors that are not

6

materially adverse employment actions. *Adesalu*, 606 F. Supp. at 103; *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008). Thus, the Court considers this cases to support, rather than undermine, Adewole's argument. To the extent that they do not, this Court must respectfully disagree, and will follow the clear command of *Brady* and *Jones*:

> Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — *and should not* — decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.

*Brady*, 520 F.3d at 494. Accordingly, the Court will not consider whether Adewole has made out a prima facie case, and will turn to the substance of his claims.

**B.      The Court Grants Summary Judgment to PSI on Adewole's Discrimination and Retaliation Claims**

In addressing the ultimate issues of retaliation and discrimination, courts consider the strength of the defendant's proffered justifications for its actions, the plaintiff's arguments that those justifications are pretextual, and any other evidence that permits an inference of discrimination. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1295 n.11 (D.C. Cir. 1998) (en banc). The Court must be mindful, however, that a plaintiff seeking to show that a defendant's proffered explanations are pretextual must do more than simply show that those explanations are flawed or incorrect. "An employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). Accordingly, although "discrediting an employer's asserted reason is often quite probative of discrimination," *Brady*, 520 F.3d at 496 n.4, a plaintiff's "ultimate obligation" is to show "both that the explanation is incorrect and that

7

the employer's real reason was discriminatory [or retaliatory]." *Aka*, 156 F.3d at 1288 n.3. With this standard in mind, the Court turns to PSI's explanation for Adewole's termination and Adewole's arguments of pretext, analyzing his retaliation and discrimination claims together.

1. **Adewole Has Not Presented Evidence Sufficient to Raise an Inference of Pretext**

PSI's proffered non-discriminatory justification for disciplining and then terminating Adewole is straightforward: PSI contends that Adewole committed fraud when he provided a "daily commuting service" for his sister, took his client K.G. to a family picnic and on several personal outings, and overstated the distances of various trips he took. Adewole concedes that these concerns are facially legitimate. He argues, however, that they must be pretextual because they are false.

a. **PSI's Investigation Into The Allegations Against Adewole**

First, Adewole responds to PSI's assertion that he sought reimbursement for daily commutes with his sister by stating that his sister does not live in, and has never visited, the United States. Adewole Decl. ¶ 19. Similarly, he argues that he could not have taken K.G. to a family picnic, as alleged, because he has no family in this country. Pl.'s Opp'n at 15–16 & n.8. Further, he avers that the fact that PSI was willing to accept the word of K.G., who "[h]as the mental abilities of a 9 or 10 year old," as to these facts is clear evidence that PSI "was merely looking for something to terminate [him] with and could not care any less about the truth of the assertion[s]." The Court cannot agree.[4]

---

[4] The Court notes that whether any of Adewole's relatives actually live in the United States, or whether he really took the actions described by PSI, is ultimately irrelevant. Rather, the salient question is whether PSI's belief in these accusations was honest and reasonable when it discharged Adewole. *See Brady*, 520 F.3d at 496 (" The question is not

Adewole's assertion that PSI could not reasonably have relied on K.G.'s statements is unsupported by any material in the record. The Court declines to infer, merely from the fact that K.G. is a PSI program participant, that he is an unreliable witness as to his own daily whereabouts.[5] Further, PSI did not terminate Adewole solely on the basis of K.G.'s description of his activities. Following K.G.'s report, PSI undertook an audit of Adewole's mileage claim forms, which apparently confirmed K.G.'s description. It was on this basis that Adewole was given two warnings and then eventually terminated. *See* Williams Decl. ¶¶ 14–22, 29–32.

Adewole offers no evidence suggesting that this description of PSI's investigation is false, or that the investigation itself was conducted in so unreasonable or capricious a fashion as to imply discriminatory or retaliatory intent. He emphasizes that PSI never questioned him about K.G.'s accusations, but that fact alone does not suggest that PSI did not honestly believe that Adewole had committed the alleged misconduct. In *Brady*, the D.C. Circuit affirmed a grant of summary judgment for the defendant, notwithstanding the plaintiff's assertions that the defendant had "overreacted and adopted a hair-trigger approach" to the allegations of misconduct that had prompted the challenged employment action. *See Brady*, 520 F.3d at 496. Here too, the fact that the defendant reacted swiftly to accusations that appeared reasonably credible does not suggest that its response was discriminatory, even if those accusations were ultimately inaccurate — which is far from clear.

---

whether the underlying . . . incident occurred; rather, the issue is whether the employer honestly and reasonably believed that the underlying . . . incident occurred.").

[5] The Court notes that Melvin Williams describes the "average mental age" of "most program participants" as approximately 10 years old. Def.'s Mem. Ex. 2 (Decl. of Melvin Williams) ¶ 4. Even if this phrase properly describes K.G. himself, however, it does not by itself suggest that he cannot provide an accurate description of his daily routine.

### b. Mary Kimbrough's Pre-Approval of Adewole's Travel

Next, Adewole argues that PSI's charge that his travel was excessive represents a "change in position" that is suggestive of pretext because his supervisor, Mary Kimbrough, had to pre-approve each trip he took with a program participant. Thus, he argues, he was "not responsible for determining the appropriateness of the length of his trips or the substance of them," and PSI could not have actually fired him on this basis because it could simply have declined to approve the trips in the first place. Pl.'s Opp'n at 17. PSI responds simply that, because Kimbrough was not involved in the decision to terminate him, no change in position has occurred. Def.'s Reply at 12–13. Although the Court is unconvinced by PSI's argument, it nevertheless concludes that Kimbrough's approval of Adewole's travel does not undermine PSI's proffered justification for his termination.

To begin with, the Court rejects PSI's assertion that Kimbrough's approvals are irrelevant to whether Adewole was actually fired for PSI's stated reasons simply because different supervisors approved Adewole's activities and fired him. Such a scenario can support a finding of pretext where there is a direct contradiction between two managers' assessments of a plaintiff's performance. For example, in *McBride v. Seidman*, 1989 WL 39396 (D.D.C. Apr. 7, 1989), the court found that the plaintiff's age discrimination claim was bolstered by the fact that the plaintiff had been fired by a regional director who had ignored the relatively positive performance evaluations and personal opinions of the plaintiff's direct supervisors. *See id.* at *9, 11. Thus, PSI's response does not dispose of Adewole's argument regarding Kimbrough's approval of his travel.

Even so, the Court cannot agree with Adewole that the approval process makes it self-

evident that PSI's fraud concerns are pretextual. To be sure, PSI does not explain whether Kimbrough was consulted about Adewole's termination or questioned in the investigation into his conduct — or, if not, why not. That said, it is also unclear what relationship existed between the activities she believed she was approving and the conduct that McClure and Williams allegedly came to believe that Adewole had engaged in. After all, PSI's explanation for Adewole's termination is that he submitted fraudulent claim forms; if Adewole obtained Kimbrough's approval of his travel *by fraud*, the fact that his trips ostensibly had her blessing cannot be taken to undermine that explanation. Whether that is actually the case here is simply unclear; by the same token, it is in no way clear that Kimbrough's approval reflected the fact that PSI had no problem with Adewole's conduct. In the absence of some corroborating evidence, the Court cannot interpret this muddle of facts to mean that PSI's stated concern about fraud, which is supported by other evidence, is pretextual. *Cf. McBride*, 1989 WL 39396, at *11–12 (describing testimony by the plaintiff's direct supervisor that contradicted that of the firing official and other facts, including statistical evidence, that supported a finding of discrimination).

    c.  **PSI's Request that Adewole Resubmit a Claim Form**

 Finally, Adewole points to an incident that, he alleges, illustrates PSI's efforts to manufacture reasons to terminate him. Some weeks after Adewole submitted a reimbursement form for June 16–29, 2007, he was asked by PSI to re-do the form from memory. This resulted in multiple discrepancies between the two forms, totaling roughly eight dollars worth of mileage. In its motion, PSI points to these discrepancies as an example of Adewole's fraud. Def.'s Mem. at 11–12. Adewole, on the other hand, suggests that a difference of eight dollars is "too insubstantial" to have prompted PSI to fire him, meaning that PSI was looking for reasons to do

11

so. Pl.'s Opp'n at 18. The Court is unconvinced by Adewole's argument. PSI does not assert that it fired him solely on the basis of the discrepancies between these two forms; rather, it apparently sees the forms, and presents them to the Court, merely as *examples* of Adewole's improper conduct. Further, the Court does not see the fact that Adewole was asked to re-do the form as evidence that PSI was attempting to create grounds for termination; rather, that fact is consistent with PSI's account of its investigation into Adewole's apparent misconduct. In sum, Adewole's arguments do not persuade the Court that PSI's asserted reasons for terminating his employment, which are supported by credible evidence, were not the real reasons that it did so.

### 2. Other Evidence of Discrimination or Retaliation

In addition to challenging the veracity of PSI's explanation for his termination, Adewole offers other support for his claims. First, he asserts that his retaliation claim is supported by "a clear pattern of discipline leading to his termination" that followed his 2006 EEO complaint. Pl.'s Opp'n at 19. But the temporal relationship he describes is too attenuated to raise an inference of retaliation. Adewole withdrew his EEOC complaint in July 2006, and identifies no more recent protected activity. He was first reprimanded regarding his mileage claims in January 2007, and then again in July 2007. He was eventually terminated in September 2007. Without more, a gap of six months between the plaintiff's protected activity and the challenged action is simply too long to create an inference of retaliation. *See, e.g.*, *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (an inference of retaliation based only on a two and one-half month gap was, without any corroborating evidence, "untenable").[6]

---

[6] Indeed, the relevant gap here may in fact be the *fourteen* months between Adewole's withdrawal of the EEOC complaint and his termination, because the reprimands themselves likely could not constitute materially adverse action in violation of Title VII. A letter

Second, Adewole asserts that his discrimination claim is bolstered by "a pattern of national origin discrimination." Pl.'s Opp'n at 19. This alleged pattern has two elements. First, Adewole was replaced with an American-born individual both when he was suspended and when he was terminated. Second, while Adewole was punished for his mileage reimbursement claims, Kimbrough, the American-born supervisor who approved those claims, was not. In response, PSI points to its high number of Nigerian employees, and argues that Adewole's assertions regarded Kimbrough are without factual support. The Court agrees with PSI.

Adewole is correct that a Title VII plaintiff who is replaced by a member of a different protected class may be able to rely on that fact to support a discrimination claim. *See, e.g.*, *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005). For that fact to have significant probative value, however, there must be *some* pattern that goes beyond the plaintiff's individual situation. *See id.* Here, Adewole makes no such showing, nor responds to PSI's assertions that it employs a significantly higher proportion of Nigerians than are found in the general population of the D.C. metropolitan area. Accordingly, the Court cannot give this fact much weight.

Similarly, the fact that Adewole was punished while Kimbrough was not is of minimal value. Although a Title VII plaintiff can raise an inference of discrimination by presenting evidence that the employer treated other employees of a different protected class more favorably in the same factual circumstances, Kimbrough is not an adequate comparator. Such a person must have been similarly situated to the plaintiff such that "all of the relevant aspects of her employment situation were 'nearly identical.'" *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir.

---

of counseling, written reprimand, or unsatisfactory performance review, if not abusive in tone or language or a predicate for a more tangible form of adverse action, does not constitute materially adverse action under Title VII. *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008).

1999) (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). That is not the case here. PSI apparently believed that Adewole had deliberately engaged in ongoing fraudulent behavior. There is no suggestion that it had any such belief about Kimbrough. Thus, Kimbrough was not similarly situated to Adewole, and cannot form the basis for a comparison between Adewole and a non-Nigerian employee for the purposes of establishing discriminatory treatment on the basis of national origin. *See Turner v. Fed. Law Enforcement Training Ctr.*, 527 F. Supp. 2d 63, 73–74 (D.D.C. 2007) (individuals are not similarly situated where one is accused of misconduct and the others are not).

In sum, Adewole's arguments are insufficient to overcome PSI's asserted legitimate justification for his termination, which is supported by credible evidence. Adewole has not presented any evidence that tends to show that PSI did not honestly believe that he had committed the fraud of which he was accused, and he makes no other showing that raises an inference of either discrimination on the basis of national origin or retaliation for his EEOC complaint. As the plaintiff, Adewole bears "the ultimate burden of persuasion" in showing unlawful discrimination or retaliation, *Aka*, 156 F.3d at 1289, and he is unable to carry that burden here. Accordingly, PSI is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that PSI's motion for summary judgment [#16] should be granted. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

14